## ESTATE OF Clare Fink LOGAN,† Caroline A. Fink, personal representative, Plaintiff-Respondent,

v.

## NORTHWESTERN NATIONAL CASUALTY CO.,† Defendant-Appellant and Cross-Respondent,

## Gregory P. DOWLING,† Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 86–0695. Orally argued November 19, 1986.—Decided May 12, 1987.*

(Also reported in 409 N.W.2d 391.)

† Petitions (3) to review granted.

71

For defendant-appellant and cross-respondent, there were briefs and oral argument by *William A. Adler* of Eau Claire.

For plaintiff-respondent, there was a brief and oral argument by *William A. Adler* of Eau Claire.

For plaintiff-respondent, there was a brief and oral argument by *B. James Colbert,* of *Wiley, Rasmus, Colbert, Norseng and Cray, S.C.* of Chippewa Falls.

For defendant-respondent and cross-appellant, there were briefs and oral argument by *Michael F. O'Brien* of Eau Claire,

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Northwestern National Casualty Company, a malpractice insurance carrier, and its insured, attorney Gregory P. Dowling, appeal a summary judgment in favor of the estate of Claire Fink Logan. The estate brought suit against Northwestern and Dowling for damages arising out of Dowling's probate of the estate. Dowling cross-claimed against Northwestern for indemnity. Northwestern's policy excluded any claims known by Dowling but not disclosed in his application for insurance. Subject to the unresolved issue of Dowling's malpractice, the circuit court ruled that public policy voided Northwestern's contract exclusion barring claims by third parties. The court thus granted partial summary judgment in favor of the estate against Northwestern

on that issue. It also granted summary judgment in favor of Northwestern against Dowling on his cross-claim.[1] The court ruled that Dowling, in applying for insurance, misrepresented his knowledge of the estate's potential malpractice claim.

Should the estate succeed in its underlying malpractice claim, the practical effect of the foregoing rulings would be to assure the estate payment from Northwestern and to permit Northwestern, in turn, to pursue recovery from Dowling for misrepresentation. Because public policy does not require voiding the exclusion, and because material issues of fact remain as to Dowling's alleged misrepresentations, we reverse both judgments.

The heirs of Claire Fink Logan retained Dowling to probate her estate shortly after she died on October 29, 1979.[2] The Wisconsin inheritance tax in the Logan estate was due on October 29, 1980, and the federal estate tax on or about July 29, 1980. Dowling did not complete the returns until November, 1982. Dowling was aware of the due dates, but the reasons for his delay remain as factual disputes that must be resolved at trial.

Dowling completed an application for malpractice insurance with Northwestern in July, 1983, long after the returns were due. He answered "No" to the question whether he knew "of any circumstances, act, error or omission that could result in a professional

[1]If the trial court's decision holding Northwestern liable on public policy grounds were upheld, Dowling's cross-claim for coverage would be moot. Because we reverse the trial court, Dowling's cross-claim remains an issue.

[2]There is some ambiguity in the record as to whether Logan died on October 28 or October 29. For purposes of this appeal, we accept the trial court's finding that she died on October 29.

liability claim against him ...." Northwestern issued Dowling a "claims made" policy for the period July 1, 1983, through June 30, 1984, with a limit of $250,000 per claim.[3] The policy provided that the application was incorporated into the policy[4] and that claims arising out of acts, errors or omissions occurring prior to the policy period were covered if "prior to the effective date of this policy: ... the Insured had no basis to believe that the Insured had breached a professional duty ...."[5]

---

[3]A policy for a lesser amount was issued previously. Because the claim was not made until February, 1984, we assume it is the second and not the first application and policy that is relevant here.

[4]The policy provided:

In consideration of the undertaking of the Named Insured to pay, when due, the premium and the deductible as described herein and in the amounts stated in the Declarations, and in reliance upon the statements in the application attached hereto and made a part hereof, and subject to the limits of liability shown in the Declarations, and subject to all of the terms of this insurance, the Company agrees with the Named Insured as follows: ....

[5]The relevant language provides:

**THE COVERAGE**

**1. Professional Liability and Claims Made Clause:** To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD: (a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by the person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a lawyer or notary public;

....

PROVIDED ALWAYS THAT such act, error or omission or such personal injury happens:

74

On review of a summary judgment, we must apply the same standards as does the circuit court. *Messner v. Briggs & Stratton Corp.,* 120 Wis. 2d 127, 131, 353 N.W.2d 363, 365 (Ct. App. 1984). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

Northwestern argues first that the trial court inappropriately relied on *Rauch v. American Family Ins. Co.,* 115 Wis. 2d 257, 340 N.W.2d 478 (1983), and the direct action statute, sec. 632.24, Stats., for the proposition that, assuming malpractice occurred, the insurer is liable to the estate regardless of any misrepresentations made by Dowling in his application.

We agree that *Rauch* is inapposite. *Rauch* involved a false representation regarding drivers in an automobile liability insurance application. The plaintiffs were entitled to recover, notwithstanding the insured's misrepresentation, because sec. 632.32(6)(b), Stats., provides that no policy may exclude any automobile passenger from coverage. The legislature enacted this "omnibus statute" for the protection of innocent third parties. Policy exclusions would defeat

---

(aa)   during the policy period, or

(bb)   prior to the policy period, provided that prior to the effective date of this policy:

   . . . .

2.   the Insured had no basis to believe that the Insured had breached a professional duty or committed a personal injury; and

   . . . .

this statutorily expressed public policy. *Rauch,* 115 Wis. 2d at 264–65, 340 N.W.2d at 482.

There is no similar preemptive legislative policy mandating malpractice insurance coverage. The supreme court recently concluded that the rule of *Rauch* is "peculiar to facts involving automobile liability policies." *See Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 128, 403 N.W.2d 747, 755 (1987).

Nor does the direct action statute, sec. 632.24, require that insurers pay third parties irrespective of exclusions found in the policy. Section 632.24 provides in part:

> Any ... policy of insurance covering liability to others for negligence makes the insurer liable, ... to the persons entitled to recover against the insured ... irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

While the statute allows suit directly against the insurer, recovery from the insurer occurs only if the contract of insurance provides coverage. *See Loy v. Bunderson,* 107 Wis. 2d 400, 422–23, 320 N.W.2d 175, 188 (1982). Therefore, Northwestern is liable to the estate only if there is coverage under the policy.

We next consider whether Northwestern should have been awarded summary judgment against Dowling on his cross-claim. Public policy in Wisconsin disfavors the avoidance of coverage by an insurer, and the reasonable expectation of coverage by an insured should be honored. *Patrick v. Head of The Lakes Coop. Elec. Ass'n,* 98 Wis. 2d 66, 69, 295 N.W.2d 205, 207 (Ct. App. 1980).

Northwestern's case for misrepresentation is based upon Dowling's own statements. Dowling's affidavit and deposition acknowledge that at the time he submitted his insurance application, he knew that the estate and inheritance tax returns were past due and that penalties and interest were accruing.

Dowling's statements also indicate, however, that he had previously received IRS abatements of penalties on late tax returns. Moreover, Dowling stated that the return rates on the bonds in the estate were very low and that he had expectations of an improved stock and bond market. He therefore determined that the anticipated rise in the market would offset the interest penalties and avoid a loss. Rather than liquidate the stocks and bonds to pay the tax, he claims that he elected to allow the tax interest to accrue and make payment when the market values had appreciated. He also claimed that the personal representative or the heirs wanted to keep the stocks until they increased in value and that he consulted the personal representative in the decisions he made.

Dowling's statements directly contradict those of the personal representative, who stated that Dowling had permission to sell the bonds from the beginning and that she continually prodded him to file the returns. Neither party has offered evidence of the actual or potential loss or gain from Dowling's strategy. The evidentiary facts and figures may ultimately demonstrate a false statement on Dowling's part and establish that his excuses for late filing were specious. Nevertheless, based upon the record to date, Northwestern has not established a case for summary judgment on the issue of misrepresentation.

The form of the application question here is not unlike that in *Nolden v. Mutual Bene. Life Ins. Co.,* 80 Wis. 2d 353, 259 N.W.2d 75 (1977). In *Nolden,* 80 Wis. 2d at 366, 259 N.W.2d at 81, the insurer inquired whether the applicant had "'reason to believe [he is] not in sound physical condition?'" Although Nolden, while a child, had been diagnosed as having a heart murmur, the evidence showed that when he applied for insurance he did not consider it a condition of any consequence. It was undisputedly serious because Nolden later died at age twenty-six during open-heart surgery. The supreme court concluded in *Nolden* that the summary nature of the insurer's inquiry seeking only the applicant's opinion created a misrepresentation issue for the jury. *Id.*

Northwestern issued its policy "in reliance upon the statement in the application attached hereto and made a part hereof . . . ." The application inquired into Dowling's state of mind. It sought his personal judgment or opinion. The answer, therefore, is not measured by the objective test of what Dowling should have known or believed, but by what he actually knew or believed.

Northwestern also attempts to distinguish *Nolden* because Dowling is an attorney. It argues that unlike a lay applicant, Dowling is held to a higher standard in answering the malpractice inquiry. While Dowling is not a layman, still the question inquired of his personal judgment or opinion. His status as a practicing attorney is but one factor that can be considered by the jury in assessing his credibility. In other words, whether he misrepresented his opinion, and in fact knew or believed he had committed malpractice, is determined in part by consideration of his training and experience. Because, as in *Nolden,* the question

calls for the applicant's opinion with no further inquiries into specifics, Northwestern must refute Dowling's offered explanation.

Dowling seeks to bar Northwestern's defense of misrepresentation on the basis of sec. 631.11(4), Stats., which provides in part:

> If after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to defend against a claim if one should arise ....

It is undisputed that Northwestern did not notify Dowling within sixty days of learning of the alleged misrepresentation. Section 631.11(4), however, applies only to "a general defense to all claims." Northwestern has not asserted a general defense to all claims. It asserts a defense only to the claim of the Logan estate based upon the failure to disclose the alleged malpractice connected with it. We therefore remand the matter to the trial court because there remain disputed material facts concerning misrepresentation.

*By the Court.*—Judgment reversed and cause remanded with directions.