ESTATE OF Clare Fink LOGAN, by Caroline A. Fink, Personal Representative, Plaintiff-Respondent-Petitioner,

v.

NORTHWESTERN NATIONAL CASUALTY COMPANY, Defendant-Appellant and Cross-Respondent-Petitioner,

Gregory P. DOWLING, Defendant-Respondent and Cross-Appellant-Petitioner.

Supreme Court

*No. 86–0695. Argued March 1, 1988.—Decided June 3, 1988.*

(Also reported in 424 N.W.2d 179.)

319

320

321

323

For the defendant-appellant and cross-respondent-petitioner there were briefs by *David M. Quale, Dorothy H. Dey, Prosser, Wiedabach & Quale, S.C.* Milwaukee, *William A. Adler* and *Adler & La Fave,* Eau Claire, and oral argument by *William P. Croke.*

For the defendant-respondent and cross-appellant petitioner there was a brief by *Michael F. O'Brien* and *Garvey, Anderson, Kelly & Ryberg, S.C.,* Eau Claire and oral argument by *Michael F. O'Brien.*

For the plaintiff-respondent-petitioner there were briefs by *B. James Colbert* and *Wiley, Rasmus, Colbert, Norseng and Cray, S.C.,* Chippewa Falls and oral argument by *B. James Colbert.*

WILLIAM G. CALLOW, J.   This is a review of a published decision of the court of appeals, *Estate of Logan v. Northwestern National,* 140 Wis. 2d 71, 409 N.W.2d 391 (Ct. App. 1987), which reversed a judgment of the circuit court for Chippewa County, Judge Gregory A. Peterson presiding, granting Northwestern National Casualty Company's motion for summary judgment against Gregory P. Dowling and also granting summary judgment to the Estate of Clare Fink Logan against Northwestern National Casualty Company on public policy grounds.

This case involves a malpractice claim brought against Gregory P. Dowling (Dowling) and his insurer, Northwestern National Casualty Company (Northwestern), for Dowling's alleged negligence in the handling of the Estate of Clare Fink Logan (Estate).

On review, we are concerned only with whether Northwestern must provide coverage and defense to Dowling and whether public policy requires that the Estate be permitted to recover directly from Northwestern, notwithstanding the absence of coverage to Dowling. Resolution of the malpractice claim itself has been stayed pending resolution of the coverage question.

There are two issues before us on review. The first issue is whether Northwestern can deny coverage to Dowling for all claims made against Dowling arising out of Dowling's alleged negligence in handling the estate on either of the following bases: (a) because of an exception to the policy which provides that acts occurring prior to the policy period are not covered if Dowling had a basis to believe that he had breached a professional duty at the time he applied for coverage, or (b) because of a misrepresentation on the application by Dowling. Second, if Dowling was not covered under his policy with Northwestern, can the Estate nevertheless recover against Northwestern as a matter of public policy?

Because we conclude that Dowling knew, at the time he applied for coverage, he had breached a professional duty in failing to file timely the state inheritance tax return and the federal estate tax return (tax returns), we hold that Dowling's policy does not provide coverage for the malpractice claim arising from Dowling's failure to file timely the tax returns for the Estate. Because Northwestern argues that its denial of coverage was based upon the policy exception, we do not address the question of whether Dowling's application included misrepresentations which voided his coverage.

Moreover, although the parties' briefs before this court focus entirely upon the Estate's claim arising out of Dowling's failure to file the federal estate tax return on July 29, 1980, and his failure to file the Wisconsin inheritance tax return on October 29, 1980, the record indicates that the action brought by the Estate also seeks compensation for the following: (1) interest and penalty for late filing of fiduciary returns, (2) the cost of the personal representative's bond for three years, (3) interest on money held in noninterest bearing accounts, (4) loss of auction proceeds, and (5) additional attorney and accounting fees necessary to complete probating the estate. Based on the record before us, we are unable to conclude whether Dowling had a basis to believe, at the time he applied for insurance with Northwestern, that he had breached his professional duty in relation to the above damages. We, therefore, conclude that Northwestern is entitled to summary judgment only for that part of the claim by the Estate which arises out of Dowling's failure to file timely the tax returns.

As to the second issue, we conclude that, under the facts before us, public policy does not require Northwestern to compensate the Estate for the loss.

Accordingly, we reverse that part of the decision of the court of appeals which remanded for a determination of whether Dowling's statements on his application for insurance were misrepresentations; we affirm that part of the decision of the court of appeals which held that public policy did not require that the Estate be permitted to recover against Northwestern; and we remand the cause to the circuit court with instructions to (1) dismiss Northwestern as a party defendant to the extent that the claims against Northwestern include damages arising from Dowl-

ing's failure to file timely the tax returns and (2) continue the action to determine whether Dowling is entitled to defense and coverage by Northwestern for the remaining claims.

Because this case is before us following a motion for summary judgment, the following compendium of the facts is based upon the pleadings, affidavits, depositions, and interrogatories.

On October 29, 1979, Clare Fink Logan died. Shortly thereafter, the personal representative, Caroline Fink, retained Attorney Dowling to probate the estate. Dowling is a general practitioner, working mostly in real estate, probate, tax, and small business matters. He had previously filed federal estate tax returns and Wisconsin inheritance returns, as well as fiduciary tax returns. Dowling was aware that penalties and interest would accrue if the required tax returns were not filed timely.

The federal estate tax return for the Estate was due on July 29, 1980, and the Wisconsin inheritance tax return was due on October 29, 1980.[1] Although Dowling was aware of the filing deadlines, neither return was prepared until November, 1982. Moreover, neither return was actually filed until October, 1983, well past the statutory filing dates. Dowling, had, however, tendered $58,000 to the Wisconsin Department of Revenue on October 28, 1980, in partial payment of the Wisconsin inheritance tax. Dowling did not ask for an extension of the time for filing either the state or the federal tax return and did not make a partial payment of the federal tax.

[1] Although the Wisconsin statutes do not set out a specific due date, interest charges accrue if the inheritance tax return is not filed within twelve months of the date of death. Sec. 72.23, Stats.

Although Dowling knew that he had not filed the tax returns in a timely manner, he thought he had mailed the returns in November, 1982. However, in October, 1983, Dowling discovered the returns in his office. At that time he immediately mailed the returns to the respective offices, along with letters of explanation and a request for abatement of penalties. In December, 1983, Dowling received from the Internal Revenue Service a penalty notice of approximately $91,000. Shortly thereafter, he renewed his request for abatement of penalties.

According to Dowling, there were a number of reasons why he did not file timely the tax returns. First, there were insufficient liquid assets to pay the taxes which were due. Second, the estate was very complicated, with a variety of assets and income from many sources, making it difficult to determine accurately the value of the estate. Finally, Dowling stated that the stocks held by the Estate were not sold pursuant to a request by a Richard Becker "and/or" personal representative Caroline Fink that the stocks be forwarded to the heirs. In addition, because the value of the bonds was depressed, a decision was made not to sell any of the bonds to finalize the estate. According to Dowling, it was hoped that by retaining the stocks and bonds the market would have time to improve and thus increase the value of the stocks and bonds held by the Estate.

Dowling's assertion that the personal representative had agreed not to sell the bonds was contradicted by the personal representative who stated in a deposition that she had urged Dowling to settle the estate as soon as possible and that he was authorized to sell the bonds to pay the tax.

The federal estate tax owed by the Estate was approximately $217,000 and the Wisconsin inheritance tax was approximately $103,000. Because the tax returns were not filed timely, interest and penalties accrued on those figures from the date the taxes were due, less the $58,000 tendered for the Wisconsin inheritance tax.

In June, 1982, after the tax returns were due and before the tax returns were prepared, Dowling applied for and received professional liability insurance with Northwestern through Frank B. Hall & Co. of Wisconsin, Inc. (Hall). The policy issued to Dowling was a claims made policy for the period July 1, 1982, through June 30, 1983, with a limit of $100,000. In response to a question on the application which asked whether Dowling "knew of any circumstances, act, error or omission that could result in a professional liability claim against him or his predecessors in business," Dowling responded, no. On July 14, 1983, Dowling again applied for insurance with Northwestern and was issued a claims made policy for the period July 1, 1983, through June 30, 1984, with limits of $250,000/$750,000. Dowling again asserted on the application that he did not know of any circumstances, act, error, or omission which could result in a professional liability claim against him or his predecessors in business.

The policy provided to Dowling included the following coverage provisions:

"1. **Professional Liability and Claims Made Clause:** To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS

FIRST MADE AGAINST THE INSURED DUR-
ING THE POLICY PERIOD:

"(a) by reason of any act, error or omission in
professional services . . . .

". . . .

"PROVIDED ALWAYS THAT such act, error or
omission or such personal injury happens:

"(aa) during the policy period, or

"(bb) prior to the policy period, provided that
prior to the effective date of this policy:

". . .

"(2) the Insured had no basis to believe that the
Insured had breached a professional duty or com-
mitted a personal injury."

In January, 1984, Attorney B. James Colbert
(Colbert) advised Dowling by letter that the personal
representative of the Estate had requested that Col-
bert and Chuck Norseng be substituted as attorneys
for the Estate. Colbert also asked Dowling to notify his
insurance carrier that a notice of claim had been filed
with Dowling. On February 3, 1984, Dowling called
Hall to advise it of the claim by the Estate. Dowling
followed up with a letter on February 9, 1984, formal-
ly informing Hall that a claim had been made
regarding Dowling's handling of the estate.

By letter dated February 27, 1984, Northwestern
advised Dowling that it was reserving its right to deny
coverage pending an investigation of the claim and a
determination of coverage. On February 12, 1985,
Northwestern sent a letter denying Dowling's claim
for coverage. Specifically, Northwestern stated that
the claim was not covered because Dowling had "a
basis to believe [he] had breached [a] professional duty

at the time [he] made application for coverage for the policy periods commencing July 1, 1982, and July 1, 1983." Northwestern also noted in the letter that it was its opinion that Dowling had failed to comply with the provision in his policy which required cooperation in processing the claim.

On April 3, 1985, the Estate initiated this action against Dowling. In the complaint, the Estate alleged that Dowling was negligent in probating the estate, including, but not limited to, the filing of all necessary tax returns and that the negligence caused the Estate to sustain a loss of at least $212,000.[2] The complaint also alleged that Northwestern, as insurer of Dowling, was a proper party defendant to this action. Dowling denied the allegations in the complaint and cross-claimed against Northwestern, requesting an order that Northwestern provide coverage, defense, and indemnification to Dowling. In his cross-complaint, Dowling also alleged that Northwestern had acted in bad faith and breached its insurance contract with Dowling.

In response to the complaint, Northwestern alleged that the insurance policies provided coverage for claims based upon acts prior to the policy only if, at the time the insured applied for the policy, the insured had no basis to believe that the insured had breached

[2]An affidavit submitted by Colbert further articulated that the damages suffered included, but were not limited to, interest on the taxes due for the federal estate tax return, the penalty assessed for the federal return, interest on the taxes due for the Wisconsin inheritance tax return, interest and penalties assessed for the fiduciary tax returns, the cost of a bond for the personal representative for three years, interest lost on assets kept in a noninterest bearing account, loss of auction proceeds, and additional attorney and accounting fees necessary to close the estate.

a professional duty. According to Northwestern, because Dowling "had basis to believe that he had breached a professional duty or committed a personal injury as alleged in the Complaint, and did not advise [Northwestern]" the insurance policies were inapplicable to the claims presented by the Estate. Northwestern also denied the allegations of bad faith.

Pursuant to a motion by Northwestern, the circuit court ordered a bifurcated trial with the first trial to resolve whether Northwestern had to provide coverage and defense to Dowling and the second trial to resolve the malpractice claim against Dowling.

Before trial on coverage and defense, Northwestern filed a motion for summary judgment, requesting a judgment that it was not required to provide coverage or defense to Dowling. Following the filing of briefs and a hearing, the circuit court granted summary judgment to Northwestern against Dowling. According to the court, Dowling knew the deadlines for filing the state and federal returns, he knew that it was his duty to meet those deadlines, and he knew that his failure to meet the deadlines would result in the accrual of interest and penalties. Moreover, he knew of those facts before applying for coverage with Northwestern. Because the policy issued by Northwestern clearly excepted coverage for claims related to breaches of an insured's professional duty of which the insured knew prior to applying for coverage, the court concluded that the claim against Dowling was not covered. The court also found that Dowling had committed a misrepresentation when he denied knowledge of any circumstances which could result in a professional liability claim against him. In addition, the court held that Northwestern's defense was not

barred by sec. 631.11(4), Stats.,[3] because the defense presented was not a defense to all claims under the policy. Accordingly, the court concluded that Northwestern did not have to indemnify or defend Dowling against the claim by the Estate.

The circuit court also granted summary judgment to the Estate against Northwestern. According to the court, sec. 632.24, Stats.,[4] and *Rauch v. American Family Insurance Company,* 115 Wis. 2d 257, 340 N.W.2d 478 (1983), required as a matter of public policy that even though Dowling was not entitled to coverage, if Dowling was found to be negligent, the Estate could recover against Northwestern directly.

Following a petition for leave to appeal filed by Northwestern and a petition for leave to cross-appeal filed by Dowling, the court of appeals granted both parties an interlocutory appeal. The court of appeals

---

[3]Section 631.11(4), Stats., provides:

"EFFECT OF INSURER'S KNOWLEDGE. No misrepresentation made by or on behalf of the policyholder and no breach of an affirmative warranty or failure of a condition affects the insurer's obligations under the policy if at the time the policy is issued the insurer has either constructive knowledge of the facts under s. 631.09(1) or actual knowledge . . . . If after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to defend against a claim if one should arise, or within 120 days if it is deemed necessary by the insurer to secure additional medical information."

[4]Section 632.24, Stats., provides in pertinent part: "Any . . . policy of insurance covering liability to others for negligence makes the insurer liable . . . to the persons entitled to recover against the insured . . . irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured."

further ordered that the proceedings in the circuit court be stayed pending resolution of the appeal.

The court of appeals then reversed the circuit court. According to the court of appeals, neither *Rauch, supra,* nor sec. 632.24, Stats., requires the imposition of liability on the insurer if there is no underlying coverage. *Logan,* 140 Wis. 2d at 76. The court of appeals further held that summary judgment for Northwestern was inappropriate in this case. According to the court, whether there was a misrepresentation is unknown because of the contradicting testimony by Dowling and the personal representative regarding whether the Estate had agreed to delay selling the bonds until the market improved. *Id.* at 77. In addition, the court held that Dowling's answer on the application must be tested by what Dowling knew or believed and that Northwestern had to refute Dowling's explanation. *Id.* at 78–79.

On August 18, 1987, we accepted the petitions for review filed by the Estate and Northwestern and the petition for cross-review filed by Dowling.

This case comes before us following the entry of summary judgment. We are therefore governed by the standards articulated in sec. 802.08(2), Stats., and must apply the standards set forth in the statute just as the circuit court applied those standards. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Pursuant to sec. 802.08(2), summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The first issue before us is whether the claim against Dowling for his alleged negligence in handling the estate is covered by Dowling's professional liability insurance with Northwestern. Specifically, the parties address the question of whether a claim arising out of Dowling's failure to file timely the tax returns for the estate is covered by his policy with Northwestern. Dowling argues that, regardless of whether the court looks to the policy language or the application, Dowling is entitled to coverage because the facts demonstrate that he had no basis to believe he breached a professional duty or responsibility. Northwestern, on the other hand, argues that Dowling knew he had breached a professional duty when he failed to file timely the required tax returns and that the explicit language of the policy excludes coverage for this known breach.

We conclude that, under the clear language of Dowling's professional liability insurance policy, the claim brought against Dowling for failing to file timely the Estate's tax returns is not covered by his liability insurance with Northwestern.

■ The focus of our inquiry is the insurance policy. An insurance policy is a contract; thus we follow the same rules of construction which are applied to contracts. We must interpret the policy to ascertain and carry out the intention of the parties to the policy. The test is not what the insurer meant the words to mean, but what a reasonable person in the position of the insured would have understood the words to mean. Words used should be given their common everyday meaning. If there is no ambiguity in the terms of the policy, we will apply the policy terms. *Kremers-Urban*

*Co. v. American Employers Insurance,* 119 Wis. 2d 722, 735–36, 351 N.W.2d 156 (1984).

We begin by noting that the language in the policy pertaining to coverage is unambiguous. Dowling's professional liability policy with Northwestern provided that he was covered for claims first made against him during the policy period by reason of any act, error, or omission in professional services rendered, "PROVIDED ALWAYS THAT such act, error or omission ... happens: (aa) during the policy period, or (bb) prior to the policy period, *provided that prior to the effective date of this policy: ... 2. the Insured had no basis to believe that the Insured had breached a professional duty."* (Emphasis added.) As with most claims made policies, the policy specifically covers claims first made during the policy period for errors or omissions which occur either during the policy period or *prior to the policy period.* Although the policy does provide retroactive coverage for errors or omissions occurring prior to the policy period, the retroactive coverage is specifically limited. If, prior to the effective date of the policy, the insured had a basis to believe the insured had breached a professional duty, then claims arising from that breach would not be covered. Moreover, this exception to coverage operates to bar coverage for a claim even in the absence of disclosure.[5]

The exception for prior acts coverage in Dowling's policy is dependent upon whether the insured had a

---

[5]If Dowling had disclosed the possible existence of the breach on the application, then the claim would have been specifically excepted from coverage when the policy was issued. Both the exclusion from coverage under the application and the exception under the policy are consistent with an insurer's intention not to insure for pre-existing claims.

"basis to believe" that the insured had committed a breach of a professional duty. Northwestern argues that a claim should be excepted from coverage if the insured knew or should have known that the insured had breached a professional duty. However, we reject the objective standard because the use of an objective standard is inconsistent with the purpose of the policy and what an insured would have understood the exception to provide. Accordingly, whether the policy excepts coverage for a claim based on a breach of a professional duty occurring prior to the effective date of the policy must be determined by analyzing whether the insured (Dowling) knew or believed, prior to the effective date of the policy, that he had breached a professional duty.

The difficulty with applying an objective standard is apparent when examined in the context of a hypothetical error or omission by an attorney. For example, an attorney commits a breach of his or her professional duty by not filing a suit within the one year statute of limitations. The attorney did not file within the year because he or she believed erroneously that the statute of limitations was three years. The statute was specific, and the attorney should have known that the statute of limitations was one year. Under an objective standard, any subsequent policy would except coverage for a claim based on failing to file the suit within one year because, prior to the effective date of the subsequent policy, the attorney should have known that he or she had breached a professional duty by failing to file the suit within the one year statute of limitations. Thus, because the attorney did not know the correct statute of limitations, but should have known the correct statute, the

attorney not only committed a breach of his or her professional duty, but he or she is also denied insurance coverage. Because we conclude that the parties could not have intended the policy to except coverage in such a situation, and because an exception of coverage in such a situation is contrary to the purpose of professional liability insurance, we hold that whether an insured had a "basis to believe" must be tested by whether the insured knew or believed that the insured had committed a breach of his or her professional duty.

Looking at the facts in the present case, we conclude that Dowling knew at the time he applied for professional liability insurance he had breached a professional duty.[6] When Dowling agreed to probate the estate, he knew that the federal estate tax return was due on July 29, 1980, and that the state inheritance tax return was due on October 29, 1980. Dowling also knew that, if the returns were filed late, the Estate would be subject to penalties and interest charges. As the attorney for the Estate, Dowling had a professional duty to file the necessary tax returns by their due date. Dowling nevertheless failed to file in a timely manner the Estate's tax returns and this subjected the Estate to penalties, interest charges, and possible criminal sanctions. *See* 26 U.S.C. sec. 7203

[6]Dowling questions whether the denial of coverage was based upon the policy exception or a misrepresentation in the application. Although it is unclear whether Northwestern's original basis for denying liability was based upon the policy or based upon the application, Northwestern did raise the argument that it is not liable under the policy. In addition, it is clear that Northwestern's present position is that it is the policy which excepts coverage for the Estate's claim.

(1982). Thus it is clear that, at the point in which the returns could no longer be filed in a timely manner, Dowling had breached his professional duty to the Estate. Because Dowling knew before June of 1982 that the dates for filing the tax returns had passed and that he had not filed the tax returns, Dowling knew he had breached his professional duty to file the returns when he applied for professional liability insurance with Northwestern in June of 1982 and again in July of 1983. Because he knew at the time he applied for insurance that he had breached his professional duty to file timely the tax returns, he therefore had a basis to believe he had breached his professional duty to file the tax returns in a timely manner. Accordingly, the policy exception bars any claim arising from the breach.

■

We reject Dowling's argument that his failure to file the returns timely was not a breach of a professional duty because the complexity of the estate prohibited him from accurately assessing the estate within the prescribed time. Although complexity of an estate may warrant a delay in closing an estate, it should not prevent an individual from arriving at an estimate of the value of the estate and the filing of a return based upon the estimate. In the present case, at the time of the initial inventory, the bulk of the estate consisted of known real estate and the contents of the safety deposit box. Should it become apparent that the estimate was inaccurate, an amended return would be filed. Furthermore, Dowling could always have requested an extension of time for filing the returns. We, therefore, reject Dowling's assertion that the complexity of the estate removed the obligation to file the returns timely.

■
Dowling also argues that his failure to file timely the tax returns was not a breach of a professional duty because the Estate's substantial holding of securities was depressed in value and because the decision not to file the returns was made after consulting with the personal representative. Assuming that the personal representative did agree to delay filing the returns until the Estate's securities recovered in value, we nevertheless conclude that this mutual decision not to file the necessary returns cannot justify a failure to file the tax returns in a timely manner. Dowling apparently wishes the court to look at his decision not to file the returns as a purely economic decision. Dowling ignores, however, the fact that the duty to file the appropriate returns is a duty imposed by law—a duty which cannot be altered by agreement with the personal representative of the Estate. Were we to accept Dowling's argument, we would countenance a violation of the federal tax law. *See* 26 U.S.C. secs. 6075(a) and 7203 (1982). We decline to do so.

■
Dowling next asserts that his failure to file timely the returns did not constitute a breach of his professional duty because he had in the past failed to file timely returns and had the penalties abated. This argument fails to recognize that (1) for six months the penalties could have been avoided by filing a request for an extension and (2) even if he was successful in getting the penalties abated, the Estate would still be liable for interest and could be subject to criminal liability. Far more troubling, though, is Dowling's apparent belief that, having "gotten away" without penalties in the past, it was no longer wrong to

participate in conduct for which penalties could be assessed.

In summary, it is clear that Dowling had a professional duty to file the tax returns in a timely manner. Moreover, Dowling knew at the time he applied for insurance that he had not filed the returns when they were due. Consequently, Dowling knew he had breached a professional duty at the time he applied for insurance. The Estate's claim against Dowling arising from his failure to file timely the tax returns is therefore not covered by Dowling's professional liability insurance with Northwestern.

As we previously noted, the record reveals that the Estate's claim also includes a claim for the following damages: (1) interest and penalties assessed for Dowling's failure to file timely the Estate's fiduciary tax returns; (2) the cost of a bond for the personal representative for three years; (3) interest lost on assets kept in a noninterest bearing account; (4) loss of auction proceeds; and (5) additional attorney and accounting fees necessary to close the estate. Thus, although Northwestern is entitled to summary judgment for all claims arising out of Dowling's failure to file the tax returns in a timely manner, we must also address whether the above claims are also excepted from coverage.

The question before us as to these claims is whether Dowling knew or believed, prior to the effective date of the policy, that he had breached a professional duty. Because the record is insufficient for us to determine whether Dowling had such knowledge or belief, we conclude that Northwestern is not entitled to summary judgment as to any of these claims. On remand, evidence may be admissible to

show that Dowling had a basis to believe that he had committed a breach. In that context, Dowling's knowledge of certain statutory provisions, including sec. 404.404, Stats. (a bank is not obligated to pay a check which is more than six months old), and sec. 863.35 (the failure to close an estate within eighteen months may be grounds for an attorney and/or personal representative to be removed from probating an estate) may be relevant to show that Dowling knew he had a professional duty in relation to some or all of these additional claims.

Dowling asserts several additional reasons why either all or part of the Estate's claim against him should be covered, notwithstanding that the policy specifically excepts the Estate's claim arising from Dowling's failure to file the tax returns in a timely manner. For the reasons listed below, we reject those arguments.

■ Dowling first argues that his misplacement of the Estate's tax returns in November of 1982 constituted a separate act under his policy with Northwestern, such that any claim for penalties or interest assessed after November of 1982 would be covered by the policy. In essence, Dowling is arguing that his negligence in failing to file the tax returns as intended in November of 1982 constituted a separate act of negligence of which he was unaware at the time he applied for insurance in July of 1983. Because he was unaware of this new act at the time he applied for his policy, Dowling contends that his policy with Northwestern should cover any claims arising out of the failure to file the tax returns in November of 1982. We conclude, however, that Dowling's negligence in misplacing the tax returns and subsequent failure to file the tax

returns until eleven months later did not constitute a separate act entitled to coverage under the policy.

There is only one act which forms the basis of the Estate's claim that Dowling was negligent in filing the tax returns. That act is Dowling's failure to file the returns in a timely manner. At the time the returns were due, Dowling intentionally chose not to file them. Later, Dowling negligently failed to file the returns. Regardless of how these two events are characterized, there is only one act which is the basis of the claim of negligence—Dowling's failure to file the tax returns in a timely manner. Because there is but one act which forms the basis of the claim against Dowling, Dowling's negligence in misplacing the tax returns in November of 1982 does not constitute a separate act entitled to separate coverage.

Even if we were to agree with Dowling that his initial failure to file the tax returns in a timely manner and his misplacement of the returns in 1982 are not one act, we nevertheless conclude that under the policy the misplacement of the tax returns does not constitute a separate act entitled to coverage. According to the policy issued to Dowling, "[t]wo or more claims arising out of a single act, error, omission or personal injury or a series of related acts, errors, omissions or personal injuries shall be treated as a single claim." Stated otherwise, a series of related acts, errors, or omissions are to be treated as a single claim. In the present case, Dowling's initial failure to file and his subsequent misplacement of the tax returns are "a series of related acts" which must be treated as a single claim. Were it not for Dowling's initial failure to file the tax returns, Dowling would not have been in the position to misplace the returns

in 1982.[7] Because these acts are a single claim, Dowling's misplacement of the returns is not covered under the policy for the same reasons that his initial failure to file the returns is not covered.

Although not raised by Northwestern, we note that the claim arising out of Dowling's negligence in failing to file timely the tax returns and the claims arising out of Dowling's alleged negligence in failing to file timely the fiduciary returns, to process the auction check, to close the estate, or to manage the cash assets of the estate are not a series of related acts which must be treated as one claim. The duties encompassed in the above claims would have arisen notwithstanding Dowling's failure to file the state tax returns in a timely manner. Moreover, regardless of the timeliness of the filing of the tax returns, Dowling's ability to file the fiduciary returns in a timely manner, process the auction check, and manage the cash assets of the estate appropriately was not affected. Although part of the extra attorney fees may be related to Dowling's failure to file timely the tax returns, because the record does not reveal the specific cause of the additional fees, we cannot definitively conclude that the additional fees are related to the failure to file the tax returns in a timely manner.

[7]Dowling's reliance upon *Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 360 N.W.2d 2 (1984), and *Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 370 N.W.2d 815 (Ct. App. 1985), for the proposition that there may be several acts which contribute to the ultimate injury and damages is misplaced. These cases are inapposite because they discuss whether a cause of action exists where there are multiple causes of injury. Although correct, these cases are not dispositive of whether there is multiple insurance coverage for the multiple cause of actions.

Dowling next argues that under sec. 631.11(4), Stats., Northwestern is estopped from denying coverage because Northwestern did not notify Dowling within sixty (60) days that it intended to deny coverage under the policy. Section 631.11(4) provides that "[i]f after issuance of a policy the insurer acquires knowledge of sufficient facts to constitute a general defense to all claims under the policy, the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to defend against a claim if one should arise." Based upon the clear language of the statute, an insurer's obligation to notify its insured within sixty (60) days arises only if the insurer acquires facts which constitute "a *general defense to all claims* under the policy." (Emphasis added.) Section 631.11(4) does not require notice if the insurer acquires knowledge sufficient to constitute a defense to a particular claim under the policy while acknowledging that other claims remain covered by the policy.

We disagree with Dowling's assertion that sec. 631.11(4), Stats., refers only to "all claims made against the insurance company in which the insurance company is attempting to deny coverage based on a misrepresentation." First, if sec. 631.11(4) applies solely where the insurer is denying coverage because of a misrepresentation, then its notice provisions are inapplicable in the present case because the denial of coverage by Northwestern is based upon a policy exception, not because of a misrepresentation. Second, the statutory language explicitly states that notice must be given "[i]f after issuance of a policy the insurer acquires knowledge of sufficient facts to

constitute a general defense to *all claims.*" (Emphasis added.) Absent some indication that the legislature intended that sec. 631.11(4) apply only to a denial of claims based upon a misrepresentation, we are bound by the plain meaning of the statute.

In the present case, Northwestern has not asserted a general defense to all claims under the policy. Northwestern is not attempting to avoid the entire policy; it is only denying coverage for one claim—the Estate's claim against Dowling for his negligence in handling the estate. Because Northwestern did not raise a general defense to all claims, the notice provisions of sec 631.11(4), Stats., are inapplicable to Northwestern's denial of coverage to Dowling.

Finally, we reject Dowling's argument that public policy dictates that Northwestern provide coverage to Dowling. The use of claims made policies is prevalent and necessary. Those cases which have refused to enforce claims made policies have done so primarily on the grounds that the policies in question either severely restricted retroactive coverage or provided no retroactive coverage for the insured. *E.g. Sparks v. St. Paul Insurance Co.,* 100 N.J. 325, 340–41, 495 A.2d 406 (1985) Unlike those cases, the claims made policy in the present case does include retroactive coverage. The retroactive coverage is limited, but only to exclude claims arising from a breach of the attorney's professional duty that the insured had a basis to believe existed prior to applying for coverage.

Dowling argues that we should interpret his policy to honor the reasonable expectations of the insured. We agree. We do not agree, however, that the

reasonable expectations of an insured or an intended beneficiary would include coverage for breaches that the insured, prior to applying for insurance, had a basis to believe had already occurred. At the time Dowling applied for liability insurance, he knew, and thus had a basis to believe, he had breached a professional duty in failing to file the tax returns when they were due. Under the terms of his policy, Dowling could not reasonably have expected that Northwestern would pay any claims which arose as a result of that breach. Insurers are not in the business of insuring known breaches, and any interpretation which required them to provide such coverage would be patently unreasonable. The limitation imposed by Northwestern, as applied to its insured, is consistent with public policy and enforceable.

Next, we turn to the second issue before us, whether public policy requires that an innocent third party (the Estate) be permitted to recover against an insurer, notwithstanding that the insured's act is excluded from coverage under the policy. We begin by noting that we agree with the court of appeals that our decision in *Rauch, supra,* is inapposite. In *Rauch* we held that a third party could recover against an insurer, notwithstanding the fact that, as between the insured and the insurer, the insurance contract was void because of misrepresentations made in the application for insurance. Underlying our decision that third parties could recover against the insurer directly was our conclusion that sec. 632.32(6), Stats., which prohibited certain exclusions from coverage, was designed to protect innocent third parties. Because the policy exclusion that the insurer was relying upon would have circumvented the legislature's intent to protect third parties, we held that the third party

348

could recover directly from the insurer, despite the fact that the policy exception would have otherwise excluded coverage in that case.

■

As we have previously recognized, our decision in *Rauch* is "peculiar to facts involving automobile liability policies." *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 128, 403 N.W.2d 747 (1987). This peculiarity is in part because of the existence of legislation which in certain circumstances requires insurance for the benefit of innocent third parties. Because there is no similar legislative enactment regarding professional liability insurance, the rationale underlying *Rauch* is inapplicable to the present case.

■

We further note that the direct action statute, sec. 632.24, Stats., does not require that Northwestern pay the Estate's claims irrespective of the exceptions in Dowling's policy. Although the direct action statute provides that an insurer may be directly liable to those entitled to recover, an injured party may recover directly against an insurer only if the contract of insurance provides coverage. *Loy v. Bunderson,* 107 Wis. 2d 400, 422–23, 320 N.W.2d 175 (1982). As we previously noted, Dowling's policy with Northwestern does not provide coverage for the Estate's claim against Dowling arising from Dowling's failure to file the tax returns in a timely manner. Accordingly, the Estate may not recover directly from Northwestern, under sec. 632.24, for its damages from the late filing of the returns.

The Estate nevertheless argues that the contract exception in this case should not be enforced because it is contrary to public policy when applied to an innocent third party. We conclude, however, for the

following reasons that the exception in the professional liability policy issued to Dowling is consistent with public policy and is therefore enforceable.

The exception at issue in Dowling's policy is a common exception found in professional liability policies. Although the language of the exceptions of this type vary, the exact language employed by Northwestern has been described as "a standard insuring clause." D. Horan & G. Spellmire, Jr., *Attorney Malpractice: Prevention and Defense,* sec. 24.04 at 24–5 (1988). It is, as we noted previously, unambiguous. The insured receives coverage for all claims made during the policy period.[8] The coverage applies to acts occurring during the policy period and prior to the policy period, provided that the insured did not have a basis to believe, before applying for insurance, that he or she had breached a professional duty.

Moreover, the exclusion at issue in this case is reasonable. By excluding coverage for prior breaches that the insured had a basis to believe existed, the insurer is protecting itself from a professional who commits a breach of his or her professional duty and then rushes to obtain insurance before a claim is brought. Insurance companies are not in the business of insuring known claims and should not be forced to pay those claims simply because they are in the business of providing insurance.

Northwestern agreed to insure Dowling with the exception that it would not insure him for past breaches that, prior to applying for insurance, he had

---

[8]The policy also covers the insured if, during the policy period, the insured notifies his or her insurer of an error or omission and a claim later arises from that error or omission.

350

a basis to believe he had committed. Although this exclusion may limit the Estate's recovery, the Estate is no worse off than a client who retains an attorney who has no insurance at all. We do not impose liability on professional liability insurers merely because they are in the business of insuring. The reason for that is obvious—they have not contracted to accept such a risk. Under the facts of this case, sound public policy requires that we decline to impose liability on Northwestern for a risk it specifically declined to insure.

In summary, Northwestern is entitled to summary judgment against Dowling for all claims arising out of Dowling's failure to file the tax returns when due. In addition, the Estate is not entitled to summary judgment against Northwestern for these same claims. Because the record is incomplete, we remand the other claims brought by the Estate to the circuit court with directions to determine whether Dowling, at the time he applied for insurance, had a basis to believe that he had committed a breach of a professional duty from which those claims arose.

*By the Court.*—The decision of the court of appeals is reversed in part, affirmed in part, and the cause is remanded for proceedings consistent with this opinion.