The **HOME INDEMNITY COMPANY MANCHESTER, NEW HAMPSHIRE,** Plaintiff,

v.

**Hillman J. TOOMBS, James A. Shelling, and Hillman J. Toombs & Associates, P.C.,** Defendants.

Civil No. 1:94–CV–3412–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 21, 1995.

**1570**

Karen Barris Bragman, Arnall, Golden & Gregory, Atlanta, GA, for Plaintiff.

Hillman James Toombs, Hillman James Toombs & Assoc., Atlanta, GA, Michael J. Warshauer, Burge & Wettermark, Atlanta, GA, for Defendants.

## *ORDER*

CARNES, District Judge.

This case is presently before the Court on Defendant Shelling's Motion for Summary Judgment [26] and Plaintiff's Motion for Summary Judgment [27]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant Shelling's Motion for Summary Judgment is denied and Plaintiff's Motion for Summary Judgment is granted.

## BACKGROUND

This case is an action by an insurance company requesting that the Court either rescind a professional liability insurance policy or issue a declaratory judgment that plaintiff has no obligation to provide either a defense or coverage with regard to claim by defendant James A. Shelling against defendants Hillman Toombs.[1] Plaintiff is an insurance company that issues professional liability or malpractice insurance policies to lawyers and law firms. Defendant Hillman Toombs & Associates, P.C. (hereinafter "the Toombs firm") obtained an insurance policy from plaintiff in January, 1993 and renewed that policy in 1994. Defendant Hillman Toombs is an attorney with the Toombs firm who represented defendant James A. Shelling in a Federal Employers Liability Act, 45 U.S.C. § 51, ("FELA") suit against Shelling's employer. Defendant James A. Shelling is a former client of Hillman Toombs who has filed suit against Toombs for malpractice.

On June 26, 1987, defendant Shelling, while working as a brakeman on a train, was injured in a railroad accident. On June 23, 1989, Shelling filed suit against several defendants, including his employer Norfolk

---

1. In Count III of the Complaint, plaintiff also requested that the Court issue a declaratory judgment that there is no coverage under the 1993 or the 1994 policy because timely notice was not given to plaintiff as soon as practicable. Plaintiff has not moved for summary judgment on this claim.

Southern, in the State Court of Fulton County, Georgia (hereinafter "the Fulton State Court action"). *James Arthur Shelling v. Norfolk Southern Corp.*, Civ. No. 275289 (State Court of Fulton County, Ga., filed June 23, 1989). At that time, Shelling was not represented by Toombs.[2] On May 20, 1991, Toombs filed a notice of appearance in the Fulton State Court action entering his appearance as attorney of record for Shelling.

On July 5, 1991, Toombs voluntarily dismissed without prejudice the Fulton State Court action. Three days later, Toombs filed a Complaint in the Superior Court of Fulton County, Georgia (hereinafter "the Fulton Superior Court action") on Shelling's behalf against Southern Railway Company asserting FELA claims as a result of the railroad accident. *James Arthur Shelling v. Norfolk Southern Corporation F/K/A Southern Railway Co.*, Civ. No. D90936 (Superior Court of Fulton County, Ga., filed July 8, 1991).

On April 3, 1992, the court transferred the case from the Superior Court of Fulton County to the Superior Court of Bibb County, Georgia. Southern Railway Company then filed a motion for summary judgment based in part on Shelling's failure to comply with the FELA's three year statute of limitations.

On July 27, 1992, the court granted summary judgment to Southern Railway Company because the action in Superior Court of Fulton County was filed after the three year statute of limitations had expired. In that order, the court found that: "Shelling's error in dismissing his State court claim, while unfortunate, does not present the type of extraordinary situation for which equitable tolling is preserved." (App. to Pl.Mot. for Sum.J. [27] at A00028.) Additionally, the court concluded that Georgia's renewal statute, O.C.G.A. § 9–2–61, does not apply to FELA actions. (*Id.* at A00026.)

On August 6, 1992, Shelling filed a notice of appeal with the Court of Appeals of Georgia.

On January 13, 1993, Toombs submitted an application to plaintiff for professional malpractice insurance in the name of "Attorney at Law Hillman J. Toombs and Associates." On the application, Toombs stated that neither he nor his firm had held a professional liability policy within the past five years. By signing the application, Toombs warranted that: the information contained herein is true as of the date this application is executed and that is shall be basis of the policy of insurance ... if the company accepts this application by issuance of a policy. (Aff. of Christy Panza, at Ex. A.)

In response to Question 11(d) of the Application which asked: "Does any lawyer named in Question 5(a) know of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, the firm or its predecessors?", Toombs checked "NO." (*Id.*)

On January 28, 1993, Toombs' professional liability application was underwritten and plaintiff issued a policy, number LPL–F911923, providing the Toombs firm with $200,000 coverage per claim and $600,000 in the aggregate for the time period January 13, 1993 through January 13, 1994 ("the 1993 Policy"). The 1993 Policy was issued with a Prior Acts Exclusion Endorsement. Such an endorsement, when attached to a policy, bars from coverage losses resulting from claims against the insured arising from acts, errors or omissions by the insured occurring prior to the effective date of the policy issued.

On March 9, 1993, the Georgia Court of Appeals affirmed the trial court's order that Shelling's cause of action was barred by the statute of limitations. In its order, the Court of Appeals wrote: "After a review of the record, we find that the trial court in his order fully and correctly addressed the issues in this case. Accordingly, his order ... is hereby adopted as the opinion of this court." (App. to Pl.Mot. for Sum.J. [27] at A00034.) Toombs then filed a motion for reconsideration which was denied by the Georgia Court of Appeals on March 30, 1993. Toombs then petitioned the Georgia Supreme Court for certiorari. The Georgia Supreme Court denied this petition on July 15, 1993. On September 10, 1993, the Georgia Supreme Court also denied the subsequent motion for reconsideration.

---

2. Warner R. Wilson, Jr. and Phillip E. Friduss of Wilson, Strickland & Benson, P.C., and Duncan Y. Manley of Rives & Peterson signed the complaint.

In October of 1993, Toombs submitted a renewal application on behalf of his firm for professional liability insurance from plaintiff. Toombs failed to provide a response to Question 7(a), which asked: "Is any lawyer aware of any claim, incident, act or omission in the last year which might reasonably be expected to be the basis of a claim or suit, arising out of the performance of professional services for others." Plaintiff's agent, Christy Panza wrote to Toombs and asked him to submit a response to Question 7(a) and re-sign, re-date and return the renewal application.

On November 19, 1993, Toombs returned the renewal application to Panza. Toombs checked "NO" in response to Question 7(a) and signed the Renewal application. By signing the renewal application, Toombs also agreed that "the warranties, representations and conditions contained in the 'Notice to Applicant' in the original application continue in full force and effect." (Aff. of Panza, at Ex. E.)

Plaintiff offered the Toombs firm a renewal policy providing either $200,000/$600,000 in coverage or $500,000/$1,000,000 in coverage per claim/per year. Plaintiff offered the renewal policy without a Prior Acts Exclusion Endorsement, as was its policy when attorneys who renewed had checked "NO" in response to Question 7(a). Plaintiff also alternatively offered the Toombs firm a renewal policy with the Prior Acts Exclusion Endorsement for a lower premium.

On December 2, 1993, Toombs elected to obtain the $500,000/$1,000,000 coverage without a Prior Acts Exclusion Endorsement attached and paid the premium of $2,823.

On December 8, 1993, Toombs filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on February 22, 1994.

On May 19, 1994, Toombs notified plaintiff by letter that a claim was being made against him by Shelling. On September 19, 1994, plaintiff tendered a check for $4,089.00 to Toombs as a refund of his premiums. That letter, written by Karen Bragman, stated that the premiums were tendered because Toombs had "fraudulently obtained the insurance policies as a result of material mis-

representations and fraudulent omissions in [his] original application and [his] renewal application." (Aff. of Whalen, at Ex. J.)

On October 19, 1994, Shelling initiated an action against Toombs in the State Court of Fulton County, Georgia. The complaint alleged three counts: (1) breach of contract, (2) negligence/professional malpractice, and (3) fraud.

On December 7, 1994, Toombs rejected plaintiff's tender of his premiums.

On December 22, 1994, plaintiff instituted this action for declaratory judgment. On August 11, 1995, both defendant Shelling and plaintiff filed motions for summary judgment.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence[3] designating " 'specific facts

---

3. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2511. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Rescission pursuant to O.C.G.A. § 33–24–7(b)

### A. Generally

█ Plaintiff contends that the 1993 and 1994 policies should be rescinded under O.C.G.A. § 33–24–7(b). That statute provides that:

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been shown to the insurer as required either by the application for the policy or contract or otherwise.

O.C.G.A. § 33–24–7(b)(1)–(3).

Thus, when an applicant for insurance makes material misrepresentations on his or her application for insurance, the insurer is entitled, as a matter of law, to rescind the policy. *See Worley v. State Farm Mut. Auto. Ins. Co.,* 208 Ga.App. 805, 807, 432 S.E.2d 244 (1993) (affirming trial court's grant of summary judgment for insurer when representation was objectively false and material because it changed nature of risk); *Life Ins. Co. of Ga. v. Helmuth,* 182 Ga.App. 750, 357 S.E.2d 107 (1987) (reversing trial court's denial of directed verdict when evidence was uncontroverted that applicant for insurance failed to disclose information that was material to the issuance of policy); *Atha v. Mid–South Ins. Co.,* 173 Ga.App. 489, 491, 326 S.E.2d 853 (1985) (affirming trial court's grant of summary judgment for insured).

Plaintiff contends that the Court should rescind the policy under any of the three subsections. The Court will address each in turn.

### B. O.C.G.A. § 33–24–7(b)(2)

█ Plaintiff argues that the 1993 and 1994 policies should be rescinded because Toombs failed to disclose the facts regarding the Shelling case on either the 1993 or the 1994 application and that information was material to the acceptance of the risk by plaintiff. In response, defendants Shelling and Toombs argue that Toombs had no reason to believe, at the time he completed the applications, that the Shelling case would

result in a claim under the policy at the time he applied for coverage.

■ To prevail upon a claim under O.C.G.A. § 33–24–7(b)(2), plaintiff must prove that (1) a false statement, either a misrepresentation, omission or incorrect statement of facts, was made by the applicant for insurance and (2) the misrepresentation was material because it changed "the nature, extent, or character of the risk." *Nappier v. Allstate Ins. Co.,* 766 F.Supp. 1166, 1168 (N.D.Ga.1991) (Hall, J.) (quoting *Oakes v. Blue Cross Blue Shield,* 170 Ga. App. 335, 336, 317 S.E.2d 315 (1984)). With regard to the first element, plaintiff need not prove that Toombs made the statement with intent to deceive or even knowledge of its falsity when making the statement. *Id.* The statement must be "objectively false" and *"the subjective belief of the insured is not the issue." Lee v. Chrysler Life Ins. Co.,* 204 Ga.App. 550, 551 n. 1, 419 S.E.2d 727 (1992) (emphasis added); *see United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238, 248 S.E.2d 635 (1978) ("Accordingly, we expressly overrule those cases which require actual knowledge of the falsity of misrepresentations in order to prevent a recovery on the policy ... [listing four cases overruled by this decision].").

When the facts are not in dispute, courts frequently determine whether the statement was objectively false and material as a matter of law. *See Nappier v. Allstate Ins. Co.,* 961 F.2d 168, 170 (11th Cir.1992) (affirming trial court's grant of summary judgment that policy was void under O.C.G.A. § 33–24–7(b)(3)); *Lee v. Chrysler Life Ins. Co.,* 204 Ga.App. at 552, 419 S.E.2d 727 (affirming trial court's grant of summary judgment that policy was void under O.C.G.A. § 33–24–7(b)(2)).

### 1. False statement

The Court concludes, as a matter of law, that Toombs made an objectively false statement when he answered "no" to Question 11(d) on the application for the 1993 policy. Question 11(d) asked: "Does any lawyer named in Question 5(a) know of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, the firm or its predecessors?" When Toombs checked "no"

to that question, Toombs had already unsuccessfully opposed defendants' motion for summary judgment because the trial court concluded that Shelling's claim was barred by the statute of limitations. In that order, the trial court called the voluntary dismissal of the case an "error." Error is the same language that was used in Question 5(a).

Even if the Court were not persuaded that Toombs' answer to Question 11(d) was objectively false, the Court finds that Toombs' answer, over ten months later, on the application to renew the policy was clearly an objectively false response. Question 7(a) asked: "Is any lawyer aware of any claim, incident, act or omission in the last year which might reasonably be expected to be the basis of a claim or suit, arising out of the performance of professional services for others?" When Toombs first submitted his application, he did not answer Question 7(a) or 8. (Aff. of Panza, at Ex. D.) It was only after plaintiff's agent, Christy Panza, wrote to Toombs and requested that he submit a response to the questions that Toombs checked "no."

In November of 1993, the time Toombs checked "no", the Georgia Court of Appeals had affirmed the trial court's decision against Shelling. The Georgia Court of Appeals had also denied the motion for reconsideration of its order. Additionally, the Georgia Supreme Court had denied certiorari. Thus, at the time Toombs checked "no", he had exhausted every avenue of appeal except for a petition to the United States Supreme Court. Petitions for certiorari to the United States Supreme Court are seldom granted.

In view of this undisputed evidence, the Court concludes that Toombs' answer on the application for the 1994 renewal policy was objectively false. Both Toombs and Shelling argue that Toombs had no knowledge that a claim would be made by Shelling against Toombs. Both state that the subject of a claim never came up in any conversation between the two. Even if this is true, which the Court has no reason to doubt, this is irrelevant. As mentioned before, "the subjective belief of the insured is not the issue." *Lee v. Chrysler Life Ins.,* 204 Ga.App. at 551 n. 1, 419 S.E.2d 727. The Georgia courts do

not require an insurer to prove that the insured intentionally misrepresented material facts when filling out the application for insurance. "In determining whether the application contained misrepresentations, omissions, concealment of facts, or incorrect statements sufficient to prevent a recovery under the policy, it is immaterial whether [the insured] acted in good faith in completing the application." *Davis v. John Hancock Mut. Life Ins. Co.*, 202 Ga.App. at 5, 413 S.E.2d 224; *see Taylor v. Georgia Int'l Life Ins. Co.*, 207 Ga.App. 341, 342, 427 S.E.2d 833 (1993) (citing same). Thus, this argument fails.

Additionally in his response, defendant Shelling argues that, although defendant Toombs knew of the circumstances regarding the Shelling case, defendant Toombs, at the time he answered the question,

> had no reason to believe that the circumstances surrounding his and his firm's representation of Shelling could result in a professional liability claim against him.... To say that Toombs did have reason to believe that a claim would result from the circumstances of the FELA case, or that he should have interpreted the question to require disclosure of the status of Shelling's suit, implies that in every case where an attorney suffers an adverse ruling, he must report those circumstances to his liability carrier as a circumstance that could potentially lead to a claim. This would be an absurd result.

(Def. Shelling Response [30] at 5.)

▮ The Court agrees that requiring an attorney to disclose on his application for professional liability insurance every adverse ruling would be unreasonable. The Court also can envision circumstances in which a dispute of material fact could arise as a result of questions like 11(d) or 7(a). The facts in this case, however, do not present such a situation, as they are so clear—namely, that the only reason Shelling's case was lost on summary judgment was because of Toombs' decision to voluntarily dismiss the case. Thus, in these circumstances, the Court does not find it unreasonable to expect an attorney to disclose the fact that he chose to voluntarily dismiss a client's viable action, refile it in another court, and, as result of that choice, lost the case because the second action was barred by the statute of limitations. Accordingly, the Court concludes that the answer of "no" to Questions 11(d) and 7(a) on the application and renewal application, respectively, was an objectively false statement.

**2. Representation was material to risk**

In addition to proving that the statement was objectively false, plaintiff must also prove that the statement was material because it changed "the nature, extent, or character of the risk." *Nappier*, 766 F.Supp. at 1168 (quoting *Oakes v. Blue Cross Blue Shield*, 170 Ga.App. 335, 336, 317 S.E.2d 315 (1984)). "A material misrepresentation is one that would influence a prudent insurer in deciding whether to assume the risk of providing coverage." *Nappier*, 961 F.2d at 170 (citing *Haugseth v. Cotton States Mut. Ins. Co.*, 192 Ga.App. 853, 386 S.E.2d 725 (1989)). Generally, the materiality of a statement is a question of fact for the finder of fact. *Nappier*, 766 F.Supp. at 1168. "Only where 'the evidence excludes every reasonable inference except that [the misrepresentations] were material' should the court determine materiality on its own." *Id.* (quoting *Oakes v. Blue Cross Blue Shield*, 170 Ga.App. 335, 336, 317 S.E.2d 315 (1984)).

▮ Plaintiff has supplied evidence in the form of an affidavit from Colleen M. Whalen, its underwriter responsible for analyzing risks and determining appropriate premiums for certain risks on behalf of plaintiff. (Aff. of Whalen, at ¶ 4.) Such evidence, if not controverted, is sufficient to prove that the misrepresentation was material. *See Nappier*, 961 F.2d at 169 (affirming trial court's grant of summary judgment when evidence before court was affidavit of insurance company's underwriting manager attesting that policy would not have been issued had it known true facts); *Taylor*, 207 Ga.App. at 343, 427 S.E.2d 833 (affirming summary judgment on insurer's action for rescission where insurer presented uncontroverted evidence establishing that statements were material to company's acceptance of risk and that insurance would not have been issued had the true facts been known); *Worley*, 208 Ga.App. at 807, 432 S.E.2d 244 (quoting *Bo-*

*lin v. Massachusetts Indem. & Life Ins. Co.,* 203 Ga.App. 570, 572–73, 417 S.E.2d 325 (1992)) ("Where the evidence shows that the insurer would not have issued the policy if it had been aware of the [true facts], the evidence demands a finding that the omissions or misrepresentations of the applicant were material to the acceptance of the risk.").

In particular, Whalen's affidavit avers the following:

9. Had I known when I underwrote Mr. Toombs' initial application that a trial court had recently entered an order barring a possibly valuable claim of one of Mr. Toombs' clients because Mr. Toombs, in July of 1991, had dismissed his client's cause of action and mistakenly attempted to refile in another court after the expiration of the statute of limitations for the client's claim, I likely would have declined coverage for Mr. Toombs; even under a policy with a Prior Acts Exclusion Endorsement. At a minimum, I certainly would have required that Mr. Toombs agree to accept a specific endorsement excluding coverage for any resulting claim based upon those events. I would have further required that Mr. Toombs pay, at a minimum, a surcharge upon his quoted premium. In short, Mr. Toombs' negative response to Question 11(d) of the application was material to the acceptance of the risk assumed and the terms at which that risk was placed.

.    .    .    .    .

14. Had I known when I underwrote Mr. Toombs' renewal application the information set forth in Paragraph 9 hereof and that the Georgia Court of Appeals had affirmed the trial court's order and that the Georgia Supreme Court had denied Mr. Toombs' petition to reconsider its order denying certiorari of the action described in Paragraph 9 a mere two months before Mr. Toombs applied for renewal professional liability coverage, I would not have permitted Mr. Toombs to pay a higher premium to obtain $500,000/$1,000,000 professional liability insurance without a Prior Acts Exclusion Endorsement attached and/or an exclusion endorsement specific to the potential claim. In short, Mr. Toombs' response to Question 7(a) of the renewal application was material to the

acceptance of the risk assumed and the terms at which that risk was placed.

(Aff. of Whalen, at ¶¶ 9, 14.)

Defendants have supplied the Court with no evidence controverting this statement. Whalen's affidavit proves that the information was material because it changed the nature or character of the risk. Whalen avers that had she know of the facts surrounding the Shelling case, she would have either (1) not issued the renewal policy with increased coverage, (2) required additional premiums or (3) required a specific endorsement excluding any future claim based upon the Shelling case. Thus, the Court concludes that the information regarding the Shelling case, which Toombs failed to supply to plaintiff in either the application or the renewal application, was material because it changed the nature or character of the risk.

As the Court has concluded that Toombs made a false statement and that false statement was material, the Court grants summary judgment for plaintiff on its claim pursuant to O.C.G.A. § 33–24–7(b)(2).

### C. O.C.G.A. § 33–24–7(b)(3)

Plaintiff also argues that the 1993 policy and the 1994 renewal policy should be rescinded pursuant to O.C.G.A. § 33–24–7(b)(3). In order to prevail under this statute, plaintiff must prove that (1) the applicant for insurance made a false statement, either a misrepresentation, omission or incorrect statement of facts and (2) the insurer in good faith would not have issued the policy had it known of the true facts. *Nappier,* 961 F.2d at 170; *Taylor v. Georgia Int'l Life Ins. Co.,* 207 Ga.App. at 343, 427 S.E.2d 833. The Court has already concluded that Toombs made a false statement when he answered Question 11(d) in the application for insurance and Question 7(a) in the renewal application for insurance. Thus, the only inquiry is whether plaintiff has proved that it would not have issued the policy had it known the true facts.

Again, plaintiff refers the Court to the Whalen affidavit. In that affidavit regarding the issuance of the 1993 insurance policy, she declares that she "likely would have declined coverage for Mr. Toombs" had she known of

the circumstances surrounding the Shelling case. (Aff. of Whalen, at ¶ 9.) Regarding the issuance of the renewal policy in a greater amount than the first amount, she declares that she "would not have permitted Mr. Toombs to pay a higher premium to obtain $500,000/$1,000,000 professional liability insurance without a Prior Acts Exclusion Endorsement attached and/or an exclusion endorsement specific to the potential claim." (*Id.* at ¶ 14.) Defendants Shelling and Toombs provide no evidence to controvert this affidavit. Accordingly, the Court grants summary judgment on plaintiff's claim pursuant to O.C.G.A. § 33–24–7(b)(3). *See Nappier*, 961 F.2d at 170 (affirming grant of summary judgment because evidence that policy would not have been issued was not controverted); *Taylor*, 207 Ga.App. at 343, 427 S.E.2d 833 (affirming grant of summary judgment "because uncontroverted evidence established conclusively that the insurer would not have issued the subject policy had it been aware" of true facts).

### D.   O.C.G.A. § 33–24–7(b)(1)

■  Finally, plaintiff also argues that the policies at issue should be rescinded because they were obtained by fraud. O.C.G.A. § 33–24–7(b)(1) authorizes an insurer to rescind a policy that is acquired by fraudulent means. This section, unlike O.C.G.A. § 33–24–7(b)(2) and (3), is the only section which makes the actual knowledge of the insured relevant. *Nappier*, 766 F.Supp. at 1168 (noting that only O.C.G.A. § 33–24–7(b)(1) "involves an inquiry into the insured's mental state"). Whether or not the applicant for insurance *intended* to deceive, however, is not relevant. *Atha v. Mid–South Ins. Co.*, 173 Ga.App. at 490, 326 S.E.2d 853.

> [W]here it is shown that a material statement in an application is false which was known to the insured at the time he made it and it was made with a view toward obtaining the insurance, with the company having no knowledge of its falsity, where the company acted upon it to its injury, the law will conclusively presume an intent to deceive, and a case of actual fraud will be made out.

*Id.* (quoting *State Farm Mutual Auto. Ins. Co. v. Anderson*, 107 Ga.App. 348, 354, 130 S.E.2d 144 (1963)). Thus, the crucial issue is

whether Toombs knew the statements were false when he made them. Plaintiff urges the Court to find that Toombs made the representations at issue with actual knowledge that they were false because of admissions obtained in this litigation and because of statements made by Toombs in a sworn statement.

### 1.   Admissions

Plaintiff argues that Toombs has admitted his knowledge of the circumstances leading to Shelling's claim by virtue of his failure to respond in a timely manner to plaintiff's Requests for Admission. FED.R.CIV.P. 36(a) provides that requests for admission not denied within 30 days after service are to be deemed admitted. On March 22, 1995, plaintiff served Plaintiff's First Interrogatories, Request for Production of Documents, and Requests for Admission upon Defendant Toombs. Responses to those requests were due on April 24, 1995. By letter dated May 8, 1995, counsel for plaintiff advised defendant Toombs that production of discovery responses were overdue and requested a written explanation by May 12 as to why defendant Toombs had failed to comply with his discovery obligations. (Aff. of Passantino, at Ex. M.) On May 15, 1995 having received no response to the requests for admission, counsel for plaintiff wrote Toombs and stated that, "it is the Home's position that you have waived any objections to these discovery requests and admitted the requests for admission." (Aff. of Passantino, at Ex. N.) Finally, on June 1, 1995, 68 days after the Requests to Admit were propounded, defendant Toombs filed responses to the Home's discovery requests. (*Id.* at Ex. O.)

FED.R.CIV.P. 36(b) provides that the court "on motion" may permit withdrawal or amendment of the admission. Plaintiff first raised this argument in its Motion for Summary Judgment [27] filed on April 11, 1995. To this date, defendant Toombs has not filed any motion to withdraw the admissions. Thus, the Court concludes that the Requests for Admission are admitted in their entirety pursuant to FED.R.CIV.P. 36(a).

Plaintiff argues that Requests for Admission 3 through 6 prove that Toombs had

actual knowledge of his error at the time he answered the questions on the applications. Requests to Admit 3 to 6 asked the following:

*REQUEST NO. 3:* Admit that, prior to filing a Notice of Appeal in *Shelling v. Southern Railway Co.* (92–CV–84874) on or about August 6, 1992, you were aware that you had made an error in voluntarily dismissing Defendant Shelling's State Court claim in *Shelling v. Norfolk Southern Corp.* (No. 275289) on or about July 5, 1991.

*REQUEST NO. 4:* Admit that, prior to filing a Notice of Appeal in *Shelling v. Southern Railway Co.* (92–CV–84874) on or about August 6, 1992, you were aware that it was more likely than not that you would not prevail in reversing Judge Walker P. Johnson, Jr.'s order of July 27, 1992 in *Shelling v. Southern Railway Co.* (92–CV–84874).

*REQUEST NO. 5:* Admit that, prior to submitting an application for Professional Liability Insurance with the Plaintiff on January 13, 1993, you were aware that your voluntarily dismissal of Defendant Shelling's State Court claim in *Shelling v. Norfolk Southern Corp.* (No. 275289) could result in a professional liability claim being filed against you by Defendant Shelling.

*REQUEST NO. 6:* Admit that, prior to submitting a renewal application for Professional Liability Insurance with the Plaintiff on November 18, 1993, you were aware that your voluntarily dismissal of Defendant Shelling's State Court claim in *Shelling v. Norfolk Southern Corp.* (No. 275289) could result in a professional liability claim against you by Defendant Shelling.

(Aff. of Passantino, at Ex. L.)

As the Court has already determined that these facts are admitted into evidence, the Court must determine the effect of these admissions on its consideration of the issue of fraud on summary judgment. In affirming summary judgment based, in part, on a party's failure to respond to requests to admit in a timely manner, the Eleventh Circuit observed:

Here, the district court properly found no genuine issue as to a material fact because "the facts [were] not in dispute." Federal Rule of Civil Procedure:

expressly provides that requests for admission are automatically deemed admitted if not answered within 30 days and that the matters therein are 'conclusively established' unless the court on motion permits withdrawal or amendment of the admissions. The rule is designed to expedite litigation, and it permits the party securing admissions to rely on their binding effect.

*United States v. 2204 Barbara Lane,* 960 F.2d 126, 129 (11th Cir.1992) (quoting *Rainbolt v. Johnson,* 669 F.2d 767, 768 (D.C.Cir. 1981)). Thus, for purposes of deciding a motion for summary judgment, the facts in requests for admissions 3–6 are conclusively established.

In those requests, Toombs had admitted that (1) he was aware he had made an error in voluntarily dismissing Shelling's State Court Claim, (2) he was aware that he would likely not prevail in reversing the grant of summary judgment against his client, (3) he was aware, prior to submitting the application for insurance, that the voluntary dismissal could result in a professional liability claim being filed against him by Shelling, and (4) he was aware, prior to submitting the renewal application for insurance, that the voluntary dismissal could result in a professional liability claim being filed against him by Shelling. The effect of these admissions is to establish conclusively that Toombs had actual knowledge that the circumstances of the Shelling case could result in a professional liability claim against him. Thus, based upon these admissions, the Court has no difficulty in concluding that O.C.G.A. § 33–24–7(b)(1) provision regarding fraud applies to this case.

In addition to the admissions, however, plaintiff also refers the Court to statements made by Toombs in a sworn statement on July 26, 1994. Regarding the motion for summary judgment in the Shelling case filed on April 13, 1992, nine months before Toombs first applied for malpractice coverage with plaintiff, Toombs testified:

Q. And you carefully read the motion for summary judgment and supporting memorandum of law that they had filed in advance to filing your client's brief?

A. Yes. Yes. We read them thoroughly, and we felt like they were arguing the saving statue and all of that; and by this time had realized that the saving statute wasn't going to work for us. We didn't even argue the saving statute. But we did argue *Burnett v. New York Central Railroad* [380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) ] which was a U.S. Supreme Court case. We argued that all the way to the U.S. Supreme Court where the court held that once the case is in the improper venue and the case is later transferred to the proper venue and even though the statute of limitations has ran, the case cannot be dismissed. We raised that, but no one never addressed those issues.

Q. I've read through that. You said by this point in time, by the time that you reviewed the defendant's motion for summary judgment, you realized that the saving statute would not work for you.

A. Yes

Q. You realized that the saving statute didn't apply to federal cases or FELA cases by time you got the motion.

A. By that time—that's right.

Q. So that you realized at that point in time that your original research had been wrong.

A. Right; that's correct.

(Toombs Statement, at 25–26.)

Regarding the order issued by the trial court dismissing the Shelling case, Toombs testified that he understood that the trial court had rejected all his argument regarding *Burnett v. New York Central Railroad* that the FELA limitations period was tolled during the pendency of the first suit in Fulton State Court. (*Id.* at 28.) Additionally, Toombs realized that the trial court had rejected his argument that the renewal statute applied. (*Id.* at 29.) Finally, he testified that:

Q. And on Page 10, upon reading Page 10 of [the order], you understood that the court found that Mr. Shelling had made an error in dismissing his State Court claim: correct:

A. That's correct.

(*Id.*)

In his sworn statement, Toombs also discussed conversations he had with Shelling in which he admitted he may have made a mistake in voluntarily dismissing the action.

Q. At any point in time, did you discuss with Mr. Shelling the possibility that he might have a legal malpractice claim or negligence claim against you?

A. I don't recall if we even got into that type of discussion.

Q. Aside from mentioning legal malpractice or negligence, did you tell him in any of these discussions about your having made a mistake?

A. Yes.

Q. And how did you characterize the mistake?

A. I can't recall the exact words. I know we talked about it right after they filed a motion for summary judgment. I discussed that with him. They had filed the motion trying to get the case dismissed based on the statute of limitations.

Q. Was it that upon reading the motion for summary judgment and having read the cases that you suspected they had a reasonable chance—they being the defendants—of prevailing on that motion?

A. Yes.

Q. And at that time in time you discussed with Mr. Shelling that you may have made a mistake in voluntarily dismissing the action.

A. Somewhere around that time. I sure did. We talked about it.

Q. But to the best of your recollection, you never discussed with Mr. Shelling the possibility that he could bring a claim against you?

A. I don't recall discussing that with him.

(*Id.*)

After reviewing the sworn statement of Toombs, the Court concludes that this testimony supports the conclusion that Toombs knew he had made a mistake or error in the Shelling case. Arguably, the testimony does not compel the conclusion that Toombs knew

that his error could result in a malpractice claim. This testimony, coupled with Toombs' admissions, however, do support plaintiff's contention that Toombs' answers on the application and renewal application were fraudulent. Because the Court has found a basis for summary judgment on plaintiff's claim for rescission on the other two prongs of the statute, however, it need not reach that issue in this order.

### III. Declaratory judgment

■ As the Court has already determined that plaintiff is entitled to rescind the insurance policies issued to the Toombs firm under any of the three provisions of O.C.G.A. § 33–24–7(b), it is only addressing this final argument as an alternative ruling. Plaintiff argues that it is entitled to a declaratory judgment that it has no obligation to provide Toombs or the Toombs firm with a defense or coverage with respect to Shelling's claim of malpractice due to a policy exclusion.

The policy obligates plaintiff:

To pay on behalf of the insured all claims in excess of the deductible amount stated in the Declarations which the insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD caused by any act, error or omission for which the insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the insured's capacity as a lawyer or notary public.

It is a condition precedent to coverage under this policy that all claims be reported in compliance with Section F—Claims, I—Notice of Claims.

PROVIDED ALWAYS THAT such act, error or omission happens:

(a) during the policy period; or

(b) prior to the policy period, provided that prior to the effective date of the first lawyer's professional liability insurance policy issued by this company to the named insured or predecessor law firm and continuously renewed and maintained in effect to the inception of this policy period:

.      .      .      .      .

(2) The named insured, any partner, shareholder, employee or where appropriate the named insured's management committee or any member thereof, had *no reasonable basis to believe that the insured had breached a professional duty or to foresee that a claim would be made against the insured;* and . . . .

(Aff. of Panza, at Ex. C (emphasis added).)

By the express terms of the policy, plaintiff must pay damages only if, prior to the policy period, "the Named insured, any partner [or shareholder] . . . had no reasonable basis to believe that the insured had breached a professional duty or to foresee that a claim would be made against the insured." (*Id.*) Plaintiff argues that Toombs did have a reasonable basis to believe that he had committed a breach and also that he had a reasonable basis to foresee that a claim would be made. Plaintiff points the Court to the chronological evidence regarding the sequence of events in the Shelling case coupled with the application for, and renewal, of the insurance policies.

Based upon the undisputed evidence in the case, the Court concludes, as a matter of law, that Toombs did have a reasonable basis to believe that he had breached a duty in the Shelling case. The trial court expressly referred to his actions as an "error." Additionally at the time of renewal, Toombs had exhausted all avenues of review in the state courts and his only hope of reversal lay with the slim possibility that the United States Supreme Court would grant certiorari.

The Court also concludes, as a matter of law, that Toombs had a reasonable basis to believe that he could be sued as a consequence of the breach. In Requests to Admit No. 5–6, Toombs admitted that he was aware when submitting his application and renewal applications that his "voluntarily [sic] dismissal of Defendant Shelling's State Court claim in *Shelling v. Norfolk Southern Corp.* (No. 275289) could result in a professional liability claim being filed against you by Defendant Shelling." As this admission has not

been denied, the Court concludes that the evidence conclusively establishes that Toombs had a reasonable basis to believe that he could be sued as a result of his handling of the Shelling case.

Accordingly, the Court grants summary judgment for plaintiff on its claim for declaratory judgment that no coverage exists under the policy for the claims asserted by Shelling against Toombs.

## CONCLUSION

Accordingly, Defendant Shelling's Motion for Summary Judgment [26] is denied and Plaintiff's Motion for Summary Judgment [27] is granted.

SO ORDERED.