**MT. AIRY INSURANCE COMPANY,**
**Plaintiff,**

v.

**R. Charles THOMAS, Bozic and Thomas, a partnership, Thomas & Johnson, a partnership, Thomas, Truax, Spadaford & Walker, a partnership or unincorporated association, Thomas, Truax, Spadaford, Walker & Keenan, an unincorporated association, F. Gordon Watt, Defendants.**

**Civil Action No. 95–64E.**

United States District Court,
W.D. Pennsylvania.

Feb. 3, 1997.

---

**1074**

Dennis J. Roman, Grogan, Graffam, McGinley & Lucchino, Pittsburgh, PA, for Mt. Airy Ins. Co.

James T. Marnen, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for R. Charles Thomas, Bozic and Thomas, Thomas & Johnson, Thomas, Truax, Spadafore & Walker.

Louis B. Loughren, Pittsburgh, PA, for F. Gordon Watt.

## OPINION

COHILL, Senior District Judge.

Presently before this Court is a Motion for Summary Judgment filed on behalf of Mt. Airy Insurance Company ("Mt. Airy") in a declaratory judgment action against attorney R. Charles Thomas ("Thomas") and the various law firms in which he was a partner during the relevant time frame. The underlying action seeks a judicial determination of whether Mt. Airy is obliged to defend or indemnify the defendants, under the terms of a professional liability insurance policy ("the policy") which it issued. This question arises as the result of a legal malpractice action brought by additional defendant F. Gordon Watt ("Watt"), a former client of the defendants.

### Underlying Malpractice Claim

Watt, a former client of Thomas, filed a malpractice action against Thomas and the defendant law firms on January 4, 1995. This malpractice action alleges negligent acts, errors and omissions by the defendants in their representation of Watt in connection with a personal injury claim (the "National Freight" action). In order to determine whether coverage applies under the terms of the policy, we must review the chronological course of events which occurred after defendants undertook the representation of Watt. These facts are not in dispute.

In 1980, Thomas entered into a verbal contingent fee agreement undertaking to represent Watt in connection with his claims against National Freight, Inc., Kalis Konstanti and Stylianos Krontiris. Thomas then filed a praecipe for writ of summons in the Court of Common Pleas of Erie County, Pennsylvania on August 29, 1980. On October 9, 1980, service was made against National Freight and Konstanti. Service was never made on Krontiris.

The docket reflects no further activity by the defendants until approximately eight years later. On January 25, 1989, Thomas filed a Complaint. National Freight and Konstanti filed answers in which they raised by way of new matter a defense of failure to

prosecute. Thomas did not timely respond to the new matter. In fact, the docket reflects no further activity until April 28, 1992 when a certificate of inactivity was filed on behalf of National Freight, Konstanti and Krontiris. Thomas responded by filing a praecipe for trial on June 19, 1992.

On July 31, 1992, National Freight and Konstanti filed a Motion to Dismiss and/or For Entry of Judgment of Nolle Pros or, in the Alternative, Motion for Judgment on the Pleadings. Thomas filed an answer to the Motion to Dismiss on October 12, 1992; oral arguments were held on October 15, 1992.

On December 31, 1992, the Court of Common Pleas issued an opinion and order dismissing Watt's complaint with prejudice for failure to timely prosecute. The court dismissed Krontiris for lack of service. In its opinion, the court noted that Thomas failed to offer any compelling reasons for the nearly twelve years of inactivity.

On January 29, 1993, Thomas filed a Notice of Appeal. The appeal was quashed on July 1, 1993 because Thomas had failed to first file a petition to remove the judgment of nolle pros as required under the Pennsylvania Rules of Civil Procedure. Thomas took no further appeal.

In his malpractice action, Watt alleges both negligence in failing to timely prosecute and properly appeal and in failing to inform Watt of the true status of his action. Watt alleges that Thomas never notified him of the dismissal of his complaint by the Court of Common Pleas and never told him that the appeal had been quashed because Thomas had not followed proper procedural requirements.

### The Policy

In soliciting a quotation for professional liability insurance, defendants submitted a Renewal Application which contained the following question and answer:

> Is any lawyer aware of any claim, incident, act or omission in the last year which *might reasonably be expected* to be the basis of a Claim or suit, arising out of the performance of professional services for others?

No.

*Mot.Summ.J.,* Ex. 15, Question 7a (emphasis added). The second part of question 7 requested updated information on any previously reported claim. Defendants did not report anything related to the National Freight action in answer to that question.

Defendants also completed a Claim/Incident Disclosure Form in connection with their request for a quotation. That form asked:

> Are you, or any lawyer in your firm, aware of any incident, act, alleged error or omission that *could result* in a lawyers' professional liability claim that has not previously been reported to your present liability insurance carrier?

*Id.* at Ex. 16 (emphasis added). This question was also answered in the negative.

Defendants selected the Mt. Airy claim-made policy presently in dispute for their professional liability coverage effective June 1, 1994–June 1, 1995. That policy states in two sections that coverage is provided "in reliance upon the statements in the application and supplements" attached to the policy. *Id.* at Ex. 14, Preamble and § XIII.

The policy contains a description of coverage ·(§ I) and a section which enumerates exclusions from coverage (§ IB). Under the exclusions, the policy states that it will not cover:

> any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if an INSURED at the effective date *knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected* to be the basis of a CLAIM or suit.

*Id.* at § IB (emphasis added).

Mt. Airy argues that the Renewal Application, Claim/Incident Disclosure Form and Policy exclusion section operate to exclude the Watt malpractice action from coverage since Thomas was aware of, and failed to disclose, the information forming the basis of that action. It argues that Thomas knew or could have reasonably foreseen that, on the basis of his handling of the National Freight

action, he could be subject to a malpractice claim.

### Relevant Case Law

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the underlying facts are not in dispute, determining the coverage of an insurance policy is a question of law. *See Niagara Fire Insurance Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir.1987); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1984). "The policy language must be tested by what a reasonable person in the position of the insured would have understood the words to mean." *Lucker Mfg., Inc. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994).

In interpreting insurance policies, the court must strictly construe exclusions against the insurer. *First Pennsylvania Bank v. National Union Fire Ins. Co.*, 397 Pa.Super. 612, 580 A.2d 799, 802 (1990). However, courts are to read policy provisions in the context of the entire policy to avoid ambiguities where possible. *Niagara Fire Ins. Co.*, 821 F.2d at 220.

The defendants claim that, based on Thomas' conversation with Watt, Thomas did not believe Watt intended to file a claim. The defendants argue that we must take into account Thomas' subjective state of mind when we consider whether a "reasonable person" with his knowledge of the facts could have foreseen that a claim might be filed against him. Mt. Airy argues that the policy, including the Renewal Application and Disclosure Form, call for an objective evaluation of facts which could give rise to a claim of malpractice.

We have not located substantial precedent interpreting "reasonably foreseeable" language in the context of professional liability insurance contracts. Several other courts have addressed analogous cases but the Pennsylvania Supreme Court has not decided the issue presented here. In the absence of guidance from the Pennsylvania Supreme Court, we will review other relevant cases and endeavor to predict how the Pennsylvania Supreme Court would interpret this contract language. *Koppers Co., Inc. v. Aetna Casualty and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir.1996).

In *Home Indemnity Co. v. Toombs*, 910 F.Supp. 1569 (N.D.Ga.1995), the court determined that, under Georgia law, an insurance company could rescind a professional liability policy on the basis of a false answer to a question on an insurance form. The question called for "any acts, errors or omissions that *could* result in professional liability." *Id.* at 1574 (emphasis added). In *Toombs,* the attorney had entered his appearance in an existing action, voluntarily dismissed that action and subsequently refiled it after the applicable statute of limitations had run. He had answered "no" to the insurance form question mentioned above. In support of that answer, he argued that his client had not discussed filing a claim against him. *Id.* The court held that the subjective belief of the attorney was not an issue. *Id.*

In the alternative, the court looked to the language of the policy itself. The policy at issue contained the following language:

> ... no *reasonable basis to believe* that the insured had breached a professional duty *or to foresee* that a claim would be made against him

*Id.* at 1580. The court found that, as a matter of law, the attorney had both a reasonable basis to believe he had breached a professional duty and a reasonable basis to foresee that he would be sued. *Id.*

While not of precedential value, two unpublished district court opinions apply Pennsylvania law to similar facts. In *The Home Ins. Co. v. Stegenga*, C.A. No. 90–275, slip op. (W.D.Pa. July 3, 1991) (unpublished), the insured was a solicitor for a school district. He was responsible for prosecuting various claims on behalf of the school district relating to the construction of an elementary school. Despite repeated representations to the contrary, from February, 1976 until late 1985 when he was asked to resign, the insured did

not pursue those claims. *Stegenga*, slip op. at 6–8. The policy at issue contained language requiring that the insured have "no *basis to believe*" he has breached a professional duty. *Id.* at 4. The court found that this language called for an "objective" evaluation of the insured's knowledge. *Id.* at 3. The court read language in the renewal application as reinforcing its finding. That application asked about any "claim, incident, act or omission .... which *might reasonably be expected*" to result in a professional liability claim. *Id.* at 5 (emphasis added).

In its discussion of the attorney's knowledge, the *Stegenga* court made a distinction between a "reasonable" person viewing the relevant facts and an ignorant person with knowledge of the same facts. It concluded that an insured attorney should not be rewarded for ignorance of his duties. *Id.* At 5. The policy called for disclosure if a reasonable person possessed of the same facts would have a basis to believe the insured may have breached a professional duty.

In *Selko v. Home Ins. Co.*, C.A. No. 95–7653, slip op., 1996 WL 397483 (E.D.Pa. July 10, 1996) (unpublished), the court appears to reach a contrary conclusion. In that case, an attorney undertook to invest money belonging to a client in a manner contrary to the clients written instructions. The court looked at a negative answer to a policy application question asking if any attorney "[knew] of any circumstances, acts, errors or omissions that could result in a professional liability claim ..." *Selko*, slip. op. at 2, n. 2. The court viewed this language as the equivalent of "basis to believe" language and interpreted *Estate of Logan v. Northwestern Nat'l Casualty Co.*, 144 Wis.2d 318, 424 N.W.2d 179 (1988) as rejecting an objective "knew or should have known" standard in favor of a subjective "knew or believed" standard. *Selko*, slip. op. at 3. Nevertheless, the court concluded that the attorney was not covered because, although he erroneously did not believe he could· be civilly liable under the Pennsylvania Rules of Professional Conduct, he was aware of the duty of disclosure imposed by those rules. The court concluded that the attorney had a basis to believe that he breached a duty owed to his client and

that his failure to disclose these facts on his application gave his insurer valid grounds to deny coverage. *Id.* at 3–4.

We cannot agree with the logic of *Selko*. On the one hand, the court rejected an objective test in favor of a subjective test. On the other, the court concluded that, despite the attorney's subjective belief that he could not be sued civilly for a breach of the Rules of Professional Conduct, he had a basis to believe he could be subject to a professional liability claim.

The *Stegenga* court read the same objective standard language in *Logan* and interpreted it quite differently. *Stegenga* holds that "[a]s long as the insured is subjectively aware of facts that, *under an objective 'reasonable person' standard* would be seen as possibly giving rise to liability, he will not be covered for liability resulting from those incidents." *Stegenga*, slip. op. at 5. We look now to *Logan* in an effort to resolve the confusion.

In *Logan*, a professional malpractice claim arose out of an attorney's failure to timely file tax returns for an estate. 424 N.W.2d at 185. The policy contained language requiring that the attorney have "no basis to believe that he had breached a professional duty ...." *Id.* An application question asked if the attorney "knew of any circumstances ... that could result in a professional liability claim." *Id.* at 182. The court interpreted this language by applying a subjective ("knew or believed") standard rather than an objective ("knew or should have known") standard. *Id.* at 186.

In applying a subjective standard, the *Logan* court reasoned that, to hold otherwise would be inconsistent with the purpose of the policy. *Id.* The court illustrated its concern using the following hypothetical: an attorney files a complaint after the one year statute of limitations has run because he erroneously believes the applicable statute to be three years; that attorney clearly breached a professional duty but would not be covered by his malpractice insurance for this mistake if held to an objective (should have known) standard. *Id.*

The court's discussion in *Logan* proved to be dicta since it held that the attorney knew he had breached a professional duty in failing to timely file the returns and thus, under either standard, would not be covered. *Id.* Curiously, the court so ruled despite the attorney's argument that the complexity of the estate precluded him from accurately assessing the tax liability within the prescribed time. The attorney claimed that because of the estate's complexity, he did not believe he had breached a professional duty. *Id.* at 187. While the *Logan* court held that a subjective standard applies, it rejected the attorney's subjective claim that he did not believe he had breached a professional duty.

A third district court case follows *Stegenga* but without discussing the relevant standard. In *Pelagatti v. Coregis Group*, C.A. 95–2925, slip op., 1996 WL 184474 (E.D.Pa. April 10, 1996), the court considered a declaratory judgment action by an attorney seeking coverage for a malpractice claim against him. The underlying claim was based on the attorney's representation of a woman in a negligence action. The attorney filed a complaint on behalf of the woman but did nothing else to pursue her claim. More than four years after the complaint was filed, he received a first notice to terminate for failure to prosecute. More than two years later the attorney received a second and ultimately a third notice to terminate. He did not inform his client of any of these notices but instead misled her into believing the case was being actively pursued and trial was imminent. The woman retained a new attorney but, shortly thereafter, the complaint was dismissed for failure to prosecute. *Pelagatti*, at 1.

The policy in question became effective after the complaint had been dismissed. It contained an exclusion for any "claim arising out of any act, error, omission or personal injury occurring prior to the effective date of [the] policy if any insured at the effective date *knew or could have reasonably foreseen* that such act, error, omission or personal injury might be expected to be the basis of a claim or suit." *Id.* at 2. The court in *Pelagatti* noted only that the policy called for an examination of whether a reasonable person

familiar with the malpractice allegations would foresee that such alleged acts, errors or omissions might form the basis for a claim. *Id.* at 3. The *Pelagatti* court, relying on *Stegenga*, concluded that "a reasonable person would so foresee." *Id.* It did not discuss whether an objective or subjective standard would apply.

Other courts have considered analogous cases. In *International Ins. Co. v. Peabody Int'l Corp.*, 747 F.Supp. 477 (N.D.Ill.1990), the court determined on summary judgment that a claim was not covered by an Architects, Engineers and Construction Managers Professional Liability Policy because it was not first made during the policy period. The court then went on to discuss two related bases for determining that the claim was not covered: the insured had knowledge of acts, errors or omissions which excluded the claim from coverage and the insured misrepresented on its application facts which it knew or could reasonably have foreseen would give rise to a claim. *Id.* at 481.

The *Peabody* court rejected an argument that correspondence notifying the insured of a claim was subjectively viewed by the insured as a "negotiating ploy." *Id.* at 482. It viewed the policy language as calling for a traditional objective evaluation rather than a judgmental or subjective evaluation. *Id.* Relying on *Evanston Ins. Co. v. Security Assurance Co.*, 715 F.Supp. 1405, 1414 (N.D.Ill.1989), the *Peabody* court interpreted the reasonableness language in the application as calling for a reasonable person analysis. *Id.* at 483. Such an analysis requires the disclosure of facts which "objectively considered, might give rise to a claim regardless of the applicant's subjective belief." *Id.* (quoting *Ratcliffe v. International Surplus Lines Ins.*, 194 Ill.App.3d 18, 141 Ill.Dec. 6, 11, 550 N.E.2d 1052, 1057 (1990)).

In another context, numerous courts have held that homeowner policy language excluding coverage for damages "which *may reasonably be expected* to result from the intentional or criminal acts of an insured" is unambiguous and requires application of an objective standard. See *Allstate Ins. Co. v. Barnett*, 816 F.Supp. 492, 496 (S.D.Ind.1993) (citing cases) (emphasis added). These

cases appear to interpret the "reasonably expected" language of the policy as being the equivalent of "foreseeable" language in a tort context.

Defendants cite *Allstate Ins. Co. v. Stinger*, 400 Pa. 533, 163 A.2d 74 (1960) and *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144 (3d Cir.1993) in support of their argument for the application of a "subjective" standard. Those cases are inapposite. *Coolspring* held summary judgment inappropriate in an action by an insurance company to void a life insurance policy on the basis of material misrepresentations. The Court of Appeals determined that genuine issues of material fact existed as to whether the insured knew he had liver damage and whether the insured drank to "excess." The term "excess" was not defined in the policy. 10 F.3d at 148–50. In *Stinger*, an automobile insurance policy was found not to be void *ab initio* because the insured did not know his statement was false and the misrepresentation was not material. 163 A.2d at 76–78.

Both *Stinger* and *Coolspring* involve efforts to void policies due to misrepresentations. The present action requires the court to determine whether a specific claim falls within the policy coverage or is specifically excluded from coverage. See *Stegenga*, slip op. at 4, n. 1. It is in this context that we look to the state of the defendants' knowledge.

### Discussion

■ We predict the Pennsylvania Supreme Court, if faced with the present facts, would apply an objective "reasonable person" standard. In so finding, we distinguish between *facts* which are known to an attorney, which facts, when viewed by a reasonable person, could give rise to a claim of malpractice, and *impressions* which lead the attorney to believe that the client will not pursue a claim for malpractice. In the first instance, the fact that an attorney has failed to prosecute a claim on behalf of his client, to the extent that a court dismisses the complaint with prejudice after twelve years of inactivity, would give a reasonable person a basis to believe that a breach of a professional duty

has occurred. The subjective impression or belief of the attorney, based on his perceived relationship with his client or otherwise, as to whether the client will actually pursue a malpractice claim against him falls into the second category. It is this second category of subjective belief or impression that we believe the Pennsylvania Supreme Court would reject.

In so holding, we are compelled to define clearly our interpretation of objective and subjective knowledge to avoid the type of untenable situation which concerned the *Logan* court. An objective standard would take into account facts or information the attorney knew or possessed. A subjective standard would include beliefs, impressions, perceptions and feelings which may arguably color the attorney's view of the facts. Such subjective information could too easily be related after the fact to excuse an attorney's failure to report known potential claims.

In the context of the insurance arena, a subjective standard would defeat the ability of an insurance company to assess risk prior to issuing insurance. Clearly, the assessment of risk is a critical function which affects the determination of whether to issue coverage at all and, if so, at what premium. As a matter of public policy, courts cannot allow the insured to perform this risk analysis function instead of the insurer. We surmise that the confusing results discovered in our review of case law emanate from courts being unwilling to allow a semantic quagmire to consume a just and fair result. In other words, where the courts were concerned about the future impact of their decision, they declined to eliminate a whole category of information and instead decided the cases at hand on the narrow facts presented.

■ Factually, the instant case illustrates our concern to the contrary, in clear contrast to the hypothetical concern raised in *Logan*. The language of the Renewal Application and Claim/Incident Disclosure Form together with the Policy Exclusion call for an attorney to disclose any claims, incidents, acts, errors or omissions which might or could result in a malpractice claim. The language "knew or could have reasonably foreseen" is phrased in

such a way that it refers back to the incident, act, error or omission language. Thus, if an attorney knows of an act, error, incident or omission *and* knew or could have reasonably expected that it would result in a malpractice claim, then that incident would have to be disclosed when applying for coverage. If not disclosed, the incident would be excluded from coverage.

In the instant case, the defendant knew that he had not acted to prosecute his client's claim during the approximately twelve year period of its pendency and knew that the court had dismissed the client's complaint on that basis. These facts are undisputed. A reasonable person aware of these facts could expect that a malpractice claim *might* result. Any dispute over whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client *would* make a claim is not relevant to our analysis.

Under the *Logan* hypothetical, where an attorney does not know that he committed an error (by mistakenly believing a three year statute of limitations applied when, in reality, a one year statute of limitations applied), applying the same objective standard we would be compelled to reach a different conclusion assuming identical language in the insurance application, form and contract. In the *Logan* hypothetical, the attorney does not know that he has made an error. Consequently, he can not know or expect that a malpractice claim might or could result. We agree with the *Logan* court that such a scenario is one of the reasons why an attorney purchases malpractice insurance. However, we disagree with *Logan* to the extent that it suggests that applying an objective standard under those facts would result in the denial of coverage.

### Conclusion

We predict, based on our review of all relevant case law, that the Pennsylvania Supreme Court would adopt an objective standard in determining whether a malpractice claim is reasonably foreseeable given the facts known or possessed by the insured. In the present action, we will grant summary judgment in favor of the plaintiff, Mt. Airy Insurance Company, for the reasons stated herein, since it is clear that no genuine issue of material fact exists and, as a matter of law, the language of the Renewal Application, Claim/Incident Disclosure Form and Policy Exclusion at issue preclude coverage of the malpractice claim asserted by additional defendant Watt.